1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN W. MILLER,<br><br>                        Plaintiff,<br><br>  v.<br><br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security<br><br>                   Defendant. | CASE NO. 14cv1479-BAS-MDD<br><br>REPORT AND<br>RECOMMENDATION ON<br>CROSS MOTIONS FOR<br>SUMMARY JUDGMENT<br>[ECF NOS. 18, 19 ] |

Plaintiff Steven W. Miller ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability and disability insurance benefits under Title II for supplement security income payments under Title XVI of the Social Security Act.  Plaintiff moves the Court for summary judgment reversing the Commissioner and ordering an award of benefits (ECF No. 18).  Defendant has moved  for summary judgment affirming the denial of benefits.  (ECF No. 21).

For the reasons expressed herein, the Court recommends the case be remanded for further review of Plaintiff's allegations of repeated blackouts (syncope).  Regarding the remaining claims presented, it is recommended that Plaintiff's motion for summary judgment be denied and Defendant's motion for summary judgment be granted.

## Background

### I.    Factual Background

Plaintiff alleges that he became disabled on July 1, 2010, due to several medical conditions, including two strokes, a heart attack, osteoarthritis, depression, anxiety, and a broken ankle.  (A.R. at 19-20). [1] Plaintiff's date of birth of December 30, 1968, which categorizes him as a young individual at the time of filing.

### II.    Procedural History

On May 18, 2011, Plaintiff filed for supplemental social security income insurance payments under Title XVI of the Social Security Act, and disability insurance under Title II of the Social Security Act. (ECF No. 18 at 2).   His claim was denied initially on July 26, 2011, and denied upon reconsideration on November 16, 2011. (*Id*.).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held August 9, 2012, before ALJ Eve Godfrey. (*Id*.).  Plaintiff appeared and was represented by counsel. (*Id*.). Plaintiff and Vocational Expert Mary Jesko testified at the hearing. (A.R. at 30).   Dr. Ronald Kendrick also testified.  (*Id*.).

On January 24, 2013, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. at 12-24).  Plaintiff appealed and the Appeals Council denied Plaintiff's request to review the ALJ's decision.

---

[1] "A.R." refers to the Administrative Record filed on September 5, 2014 and located at ECF Nos. 12 and 13.

1  (A.R. at 1-3).  Consequently, the ALJ's decision became the final decision

2  of the Commissioner.

3      On June 18, 2014, Plaintiff filed a Complaint with this Court

4  seeking judicial review of the Commissioner's decision.  (ECF No. 1).  On

5  September 5, 2014, Defendant answered and lodged the administrative

6  record with the Court.  (ECF Nos. 12, 13).  On October 23, 2014, Plaintiff

7  moved for summary judgment. (ECF No. 18).  On November 13, 2014,

8  the Commissioner cross-moved for summary judgment and responded in

9  opposition to Plaintiff's motion. (ECF Nos. 19).  On December 1, 2014,

10  Plaintiff filed a Reply to Defendant's cross-motion for summary

11  judgment. (ECF No. 20).

## Discussion

## I.  Legal Standard

14      The supplemental security income program provides benefits to

15  disabled persons without substantial resources and little income.  42

16  U.S.C. § 1383.  To qualify, a claimant must establish an inability to

17  engage in "substantial gainful activity" because of a "medically

18  determinable physical or mental impairment" that "has lasted or can be

19  expected to last for a continuous period of not less than 12 months."  42

20  U.S.C. § 1382(a)(3)(A).  The disabling impairment must be so severe

21  that, considering age, education, and work experience, the claimant

22  cannot engage in any kind of substantial gainful work that exists in the

23  national economy.  42 U.S.C. § 1382(a)(3)(B).

24      The Commissioner makes this assessment through a process of up

25  to five-steps.  First, the claimant must not be engaged in substantial,

26  gainful activity.  20 C.F.R. § 416.920(b).  Second, the claimant must have

27  a "severe" impairment.  20 C.F.R. § 416.920(c).  Third, the medical

28  evidence of the claimant's impairment is compared to a list of

impairments that are presumed severe enough to preclude work. 20 C.F.R. § 416.920(d). If the claimant's impairment meets or is equivalent to the requirements for one of the listed impairments, benefits are awarded. 20 C.F.R. § 416.920(d). If the claimant's impairment does not meet or is not equivalent to the requirements of a listed impairment, the analysis continues to a fourth and possibly fifth step and considers the claimant's residual functional capacity. At the fourth step, the claimant's relevant work history is considered along with the claimant's residual functional capacity. If the claimant can perform the claimant's past relevant work, benefits are denied. 20 C.F.R. § 416.920(e). At the fifth step, reached if the claimant is found not able to perform the claimant's past relevant work, the issue is whether claimant can perform any other work that exists in the national economy, considering the claimant's age, education, work experience, and residual functional capacity. If claimant cannot do other work that exists in the national economy, benefits are awarded. 20 C.F.R. § 416.920(f).

Section 1383(c)(3) of the Social Security Act, through Section 405(g) of the Act, allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 1383(c)(3), 405(g). The scope of judicial review is limited, however, and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988) (quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995)).  The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions.  *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."  *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits.  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).  Because disability hearings are not adversarial in nature, the ALJ must "inform himself about the facts relevant to his decision," even if the claimant is represented by counsel. *Id.* (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983)).

Even if a reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).  Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings.  *Id.*

## II.   The ALJ's Decision

In this case, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, from July 1, 2010, through the date of the ALJ's decision, January 24, 2013. (citing 20 C.F.R 404.1520(g) and

416.920(g)). (A.R. at 23).  The ALJ found Plaintiff did not have an impairment or combination of impairments that meets or is medically equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926)[2]. (A.R. at 19).  Specficially, the ALJ found that Plaintiff had mild restriction in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace as to detailed or complex tasks, but no episodes of decompensation of extended duration.  (*Id.*). Based on these limitations, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Relying on the testimony of the vocational expert, the ALJ found that though Plaintiff could not perform past work, he could perform other work in the national economy, and therefore did not meet the final step of the evaluation process.   Accordingly, the ALJ concluded that "considering the [Plaintiff's] age, education, work experience and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (A.R. at 23).  The ALJ specifically noted the following medical history to be of particular relevance:

1.  Dr. Noli Cava, M.D.

On September 8, 2012, Dr. Cava diagnosed a history of coronary artery disease with occasional angina, congestive heart failure with a

---

[2]"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). "If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her [] condition." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

stable appearance, atrial fibrillation, currently in normal sinus rhythm with his pacemaker. (A.R. at 1044-1047).  Dr. Cava also noted two incidents of cerebrovascular accident that appeared to be resolved. Plaintiff was also found to have chronic low back pain "most likely due to osteoarthritis rather than muscle strain and a history of left ankle fracture with mild residual pain.  Other ailments included hypertension noted to be stable on the day of examination, hypertriglyceridemia, history of anxiety and depression.  Plaintiff also had a history of tobacco use. (*Id.*).

    2.  Dr. Thomas Sabourin, M.D.

    On May 24, 2012, Dr. Sabourin, an orthopedic surgeon, performed a consultive examination on Plaintiff.  Dr. Sabourin's impression was a history of left ankle fracture with decreased range of motion and presumed widened mortise, chronic lumber strain and sprain, chronic mild cervical strain and sprain.  Dr. Sabourin also found a history of bilateral wrist fractures with satisfactory results and elbow mild triceps tendinitis. (A.R. at 408-412).  Plaintiff appeared in no acute distress despite his mild gait abnormality and mild left ankle swelling. Examination of Plaintiff's left ankle showed no redness, crepitus, effusion, gross deformity or instability.  Plaintiff had full range of motion in all joints. All muscles were of normal strength and tone without atrophy, tenderness or spasm. (*Id.*).  Dr. Sabourin found Plaintiff's back issues were mild.  Plaintiff's arm problems were also found to be mild with no manipulative limitations.  (*Id.*).

    3.  Dr. Lillian Chang, M.D.

    On July 7, 2011, Dr. Chang performed a consultative examination. (A.R. at 283-288). Her diagnostic impression was that Plaintiff presented with coronary heart disease, cerebrovascular accident, back pain,

1   hypertension, recent left ankle/foot fracture, chronic obstructive

2   pulmonary disease, asthma and atrial fibrillation.  Dr. Chang stated that

3   Plaintiff's cardiac evaluation was unremarkable with no evidence of

4   congestive heart failure. He was not in acute respiratory distress.

5   Plaintiff's atrial fibrillation appeared controlled.  Neurologically,

6   Plaintiff had motor and sensory deficits in the left lower extremity due to

7   recent fracture.  Despite Plaintiff's limitations based upon his left foot

8   condition, Dr. Chang found that he had no limitations in using the

9   extremities for pushing, pulling, reaching, handling, grasping or

10  fingering.  (*Id.*).  Dr. Chang noted in her report that Plaintiff stated his

11  broken ankle was the result of a fall from a syncopal episode which he

12  experiences on occasion. (*Id.*).

13      4.   Dr. Romualdo R. Rodriguez, M.D.

14      On July 5, 2011, Plaintiff underwent a consultative examination by

15  Dr. Rodriguez, a board-certified psychiatrist. (A.R. at 275-281).  At the

16  time of examination, Plaintiff's chief complaint was severe depression.

17  (*Id.*).  Plaintiff reported to Dr. Rodriguez that he can shop, cook and

18  make snacks, participate in household chores and dress and bathe

19  himself.  He also reported that he swims, play poker, and watches TV.

20  He stated he can handle his own cash and pay his bills. He reported good

21  relationships with family, friends and neighbors. (*Id.*).  Dr. Rodriguez

22  determined Plaintiff's current GAF score to be 65.[3]  (A.R. at 280).  Dr.

23  Rodriguez also noted that Plaintiff's mood is depressed but not tearful,

24  his thoughts are coherent and organized, and his thought content is

25  relevant and non-delusional. (A.R. at 278).  Dr. Rodriguez reported that

26  "from a psychiatric point of view, as long as this [Plaintiff] is properly

27  _____

28      [3] GAF stands for Global Assessment of Functioning. On a scale of  0-100 with higher scores indicating a greater level of functioning.  *See Diagnostic and Statistical Manual of Mental Disorders.*

1  treated for depression and abstains from drugs and alcohol, he could

2  easily recover from his symptoms within twelve months." (A.R. at 280).

3       5.  Dr. Ronald Kendrick, M.D.

4       Dr. Kendrick testified as the medical expert at Plaintiff's hearing

5  on August 9, 2012.  Dr. Kendrick testified regarding Plaintiff's

6  orthopedic claims of disability.  Specifically, He noted the left ankle

7  fracture and the fact that the "outcome of the healing is suboptimal."

8  (A.R. at 46).  He also diagnosed spondylosis in Plaintiff's back and noted

9  the lack of treatment records for his condition. (A.R. at 47).  Ultimately,

10  Dr. Kendrick assessed Plaintiff had a residual functional capacity

11  "someplace between sedentary and light." (*Id.*)

12       6.  Mary Jesko, Vocational Expert

13       Ms. Mary Jesko testified as the vocational expert (VE) at the

14  August 9, 2012, hearing before the ALJ.  (A.R. at 59-67).  At the hearing,

15  the VE took note of Plaintiff's age, education and work experience.  The

16  ALJ posed an initial hypothetical based on Dr. Sabourin's physiological

17  assessment (see A.R. at 412).  Specifically, the ALJ asked the VE to

18  assume Plaintiff was limited to lifting/carrying 20 pounds occasionally

19  and 10 pounds frequently, limited by the ankle.  Also, Plaintiff would be

20  presumed to stand and walk up to six hours of an eight hour day and sit

21  for six hours in and eight hour day.  Because of his ankle, Plaintiff would

22  not be able to walk on uneven terrain except occasionally, but would be

23  able to climb, kneel, and crouch occasionally.  Plaintiff would be able to

24  stoop frequently "as his back is only a mild problem." (*Id.*).  In this

25  hypothetical, Plaintiff would have no manipulative limitations. (*Id.*)

26  The VE answered that a person with those limitations would not be able

27  to perform Plaintiff's former work as a retail manager position "as

28  actually performed."  The VE did point out that as generally performed

1   the positions of retail manager and outside sales would fall within" this
2   first hypothetical.  (A.R. at 62).

3       The ALJ's second hypothetical allowed for sitting for three hours at
4   a time for a total of six hours in an eight hour day, stand and/or walk  for
5   one hour at a time for a total of six hours in an eight hour day. (*Id.*).  The
6   VE testified that "as generally performed" the jobs of outside sales and
7   retail manager would fall within these limitations. (*Id.*).

8       As a third hypothetical, the ALJ asked if an individual could only
9   do sedentary work with occasional posturals, what jobs were available
10  in the national economy. (A.R. at 64).   The VE gave examples of call out
11  operator, with 440 positions available in the San Diego region, and
12  98,000 available nationally; sporting goods assembler, with 280 available
13  in the region and 5400 nationally; and optical lens assembler, with 680
14  available in the reason and 74,000 available nationally. (A.R. at 66).
15  Finally, the Plaintiff's attorney asked the VE if a person similar in age,
16  education and past work experience as the Plaintiff but was limited to
17  sitting three hours out of eight and standing three hours out of eight,
18  would be able to do past work similar to Plaintiff's past work. (A.R. at
19  67).  The VE stated that neither past work nor any other work would be
20  manageable with full-time continuity. (*Id*).

21      In his evaluation, the ALJ considered the reports of Dr. Cava, Dr.
22  Chang, and Dr. Sabourin, all examining physicians who consistently
23  reported that Plaintiff's residual functional capacity includes the ability
24  to lift and carry ten pounds frequently and twenty pounds occasionally,
25  can sit for six hours per workday, stand and walk up to two hours at a
26  time, occasionally crouch and stoop.  (A.R. at 21).  The ALJ noted that
27  the medical records did not document any debilitating side effects from
28  medication and that on January 23, 2012, Plaintiff reported that overall

1    he felt well, despite chronic low back pain and occasional palpitations.

2    The ALJ also took note that Plaintiff reported to Dr. Mallo that he does

3    aerobics two to three times a week and swims for exercise 3-4 times a

4    week. (A.R. at 357, 438).  Based on these reports the ALJ determined

5    that Plaintiff's activities appeared to be self-limited.  (A.R. at 20).

6        The ALJ gave considerable weight to the opinion from Dr. Ronald

7    Kendrick, an orthopedic specialist, who reviewed Plaintiff's medical

8    record and testified at the administrative hearing.  The ALJ pointed out

9    that Dr. Kendrick is familiar with the evaluation of medical issues in

10   Social Security disability cases and had the opportunity to review

11   Plaintiff's entire medical record.  Dr. Kendrick reported that despite

12   Plaintiff's "left ankle fracture with suboptimal healing," he had the

13   capacity to lift twenty pounds occasionally and ten pounds frequently;

14   stand/walk for thirty minutes at a time up to four hours total; sit for

15   sixty minutes at a time up to six hours total and occasionally bend,

16   stoop, kneel, crouch, or crawl.  (A.R. at 20-21).

17       Additionally, the ALJ cited to the medical reports of Dr. Mallo,

18   M.D., Plaintiff's treating physician.  On July 15, 2010, Dr. Mallo wrote a

19   generic letter on Plaintiff's behalf stating Plaintiff has a history of

20   cardiomyopathy and chronic low back pain which would preclude him

21   from doing manual physical labor. (A.R. at 376).  The letter appears to be

22   in response to a request from Plaintiff in an effort to avoid physical labor

23   to work off a Dept. of Motor Vehicle ticket he received in Murietta, CA.

24   (A.R. at 377).  On June 30, 2011, Dr. Mallo reported that Plaintiff

25   suffered from syncope, atrial fibrillation, closed fracture ankle, essential

26   hypertension unspecified, and continuous abuse of tobacco.  (A.R. at

27   344).  Citing primarily to the language in Dr. Mallo's generic letter, the

28   ALJ stated "[t]his opinion has been considered and it appears to be

1   inconsistent with the limitations adopted herein." (A.R. at 21).

2       The ALJ also discounted the opinions of the State Agency medical

3   consultants, Dr. Stuart Brodsky, M.D. and Dr. Stuart Laiken, M.D. (A.R.

4   at 21).   These physicians opined that Plaintiff was limited to not more

5   than "sedentary exertion work due to the combined effects of his

6   impairments." (A.R. at 21).  Specifically, Dr. Brodsky reported that based

7   on the seven strength factors of the physical RFC (lifting/carrying,

8   standing, walking, sitting, pushing and pulling) Plaintiff is limited to

9   sedentary work. (A.R. at 312).  Dr. Laikin also assessed a sedentary RFC

10  based upon the seven physical RFC factors. (A.R. at 394).  Neither

11  physician found Plaintiff's alleged depression as anything other than

12  non-severe. (A.R. at 307, 388).  Citing to theses physicians' limitation of

13  not more than sedentary work, the ALJ stated that "even if this

14  sedentary assessment were adopted herein, a significant number of jobs

15  would remain in the national and regional economy that the [Plaintiff]

16  could perform." (A.R. at 21).

17      The ALJ considered at length the findings of Dr. Rodriguez, M.D.,

18  an, examining psychiatric specialist.  Dr. Rodriguez assessed Plaintiff

19  with major depressive disorder in partial remission.  (A.R. at 279).  He

20  also noted that Plaintiff could easily recover from his symptoms within

21  twelve months.  (A.R. at 280).  Dr. Rodriguez opined that Plaintiff is

22  slightly limited in his ability to: 1) relate and interact with supervisors,

23  coworkers and the public; 2) maintain concentration, persistence and

24  pace; 3) adapt to stresses common to a normal work environment; 4)

25  maintain regular attendance in perform work activities on a consistent

26  basis;  and 5) perform work activities without special or additional

27  supervision.  (A.R. at at 281).  Ultimately, Dr. Rodriguez opined that

28  Plaintiff's RFC should be limited to simple on or two job instructions.

1   (A.R. at 280).

2       The ALJ interpreted Dr. Rodriguez's assessment to allow for the

3   sustained performance of unskilled work, of which all the jobs presented

4   by the VE that Plaintiff could perform fall into the unskilled category.

5   (A.R. at 22).  In addition to adopting Dr. Rodriguez's assessment of

6   Plaintiff's mental disability, the ALJ also followed the requirements set

7   out in 20 C.F.R. §404.1520a and applied the special psychiatric review

8   technique.  Specifically, the ALJ found that Plaintiff's degree of

9   functional limitation in the four functional areas were: 1) mild

10  restriction in activities of daily living; 2) mild difficulties in maintaining

11  social functioning; 3) moderate difficulties in maintaining concentration,

12  persistence or pace as to detailed or complex tasks; and 4) no episodes of

13  decompensation of extended duration. (A.R. at 19).

14      Based on his medical findings, the ALJ concluded that Plaintiff

15  "does not have an impairment or combination of impairments that meets

16  or medically equals the severity of one of the listed impairments in 20

17  CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,

18  404.1526, 416.920(d), 416.925 and 416.926).  (A.R. at 19).

19      Upon finding that Plaintiff was not disabled under step three, the

20  ALJ evaluated Plaintiff's claim under the fourth and fifth steps, which

21  determine whether Plaintiff's impairments precluded him from his

22  previous as well as any future work. (A.R. at 19).  The ALJ considered

23  Plaintiff's testimony and found him partially credible with respect to

24  Plaintiff's statements regarding intensity, persistence and limiting

25  effects of his symptoms. (A.R. at 20).  With respect to his daily acitivities,

26  the ALJ noted that despite reporting he does very little, Plaintiff report

27  to his primary care doctor that he does aerobics two to three times a

28  week and swims for exercise 3-4 times a week. (*Id.*).  The ALJ also noted

1   that Plaintiff reported to Dr. Rodriguez that he can drive, run errands,
2   shop, cook, do household chores, play poker, and handle his own
3   finances.  (*Id.*).  The ALJ concluded that Plaintiff's allegations are not
4   accepted to the extent they conflict with his assessed RFC.  (*Id.*).

5        The ALJ considered the VE's testimony, and found that even
6   though Plaintiff could not perform his past relevant work because the
7   exertional demands of his past relevant work exceed the RFC adopted by
8   the ALJ,  jobs exist in the national economy that Plaintiff could perform.
9   (A.R. at 22).  The ALJ referred to the VE's testimony citing to the
10  occupations of call out operator, small parts assembler and address
11  clerk.  (A.R. at 23).

12       After considering the testimony and medical evidence, the ALJ
13  found that Plaintiff was impaired, and had both exertional and non-
14  exertional impairments that "have had more than a minimal effect on
15  the [Plaintiff's] ability to perform basic work-related activities." (A.R. at
16  15).  The ALJ determined that Plaintiff had a medically severe
17  impairment under step two of the evaluation, though it was not an
18  impairment listed in the regulations governing step three.  The ALJ also
19  determined that based on the medical evidence presented, Plaintiff could
20  not perform his previous work, although he was still able to perform
21  light work, and such work was available to him, as evidenced by the
22  testimony of the vocational expert.  (A.R. at 23).  Because the ALJ
23  rejected the assessment of Dr. Mallo, and found that Plaintiff's
24  testimony regarding his inability to work was not fully credible, the ALJ
25  concluded that Plaintiff was not disabled, and therefore not entitled to
26  benefits.
27  //
28  //

**III.  Issues on Appeal**

   **a)  Plaintiff's syncopal episodes**

The Court has conducted a thorough review of the record and finds that the ALJ erred by overlooking several statements Plaintiff made about his syncopal (blackout) episodes, as well as the evidence in the record where Plaintiff consistently reported blackouts on several occasions.  (A.R. at 259-260, 284, 298, 344, 385, 425).

The record transcript shows that in response to questioning by the ALJ, Plaintiff referenced his occasional blackouts:

> Clmt: [O]riginally I broke the ankle because I blacked out possibly because of the heart.  I'm not for sure.  It's not the first time that I've blacked out.

 (A.R. at 40).

In response to questioning by his attorney, the Plaintiff again referenced his blackouts:

> Atty:   Aside from the conditions you just described, why else do you feel you're unable to work?
>
> Clmt:   Well, first of all the blackout incidents I've had.  It's led to multiple broken bones, ribs on both sides, my ankle, and I don't know exactly what's causing that. . . .
>
> Atty:   How often do you have blackouts?
>
> Clmt:   This year I've had three.

(A.R. at 49).

Upon further questioning by the ALJ, the Plaintiff addressed the impact of his unexplained blackouts and how they will affect his ability to work:

> Clmt:  I don't feel comfortable driving that much anymore, especially with the blackouts.

(A.R. at 60).

1    The transcript shows that the ALJ briefly acknowledged Plaintiff's
2  statements and continued on with her examination.  Once the issue was
3  raised, the ALJ should have further developed the record.  "The ALJ
4  always has a 'special duty to fully and fairly develop the record to assure
5  that the claimant's interests are considered . . . . even when the claimant
6  is represented by counsel.'" *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th
7  Cir. 2003).

8    A review of the record presented references Plaintiff's syncopal
9  episodes in six separate reports.  For example, July 14, 2011, Plaintiff
10 was seen at the UC San Diego Health System and stated he had a
11 syncopal episode two weeks prior to his appointment. (A.R. at 457).  A
12 year later, on July 23, 2012, Plaintiff was seen at the VA clinic.  (A.R. at
13 425).  According to the records, Plaintiff reported a history of "repeat
14 syncope or near syncope. . . ." (*Id.*).  Reference to Plaintiff's blackouts
15 consistently appear in the reports of his treating or examining
16 physicians.  For instance, Plaintiff's history of  blackouts are documented
17 in the reports of Dr. Mallo (A.R. at 259-260, 344), Dr. Laiken (A.R. at
18 385, 388), and Dr. Chang (A.R. at 284).  This level of consistent reporting
19 along with Plaintiff's sworn testimony should have alerted the ALJ that
20 specific findings regarding Plaintiff's allegations of chronic blackouts was
21 required. Here, the ALJ made no specific findings about the medical
22 reports or Plaintiff's testimony regarding his alleged blackouts.  Plaintiff
23 is entitled to have the relevant medical evidence and his testimony
24 considered in the ALJ's sequential analysis.

25    It is within the Court's discretion to decide whether to reverse and
26 remand for administrative proceedings or to reverse and award benefits.
27 *McAlister v. Sullivan*, 888 F2d 599, 603 (9th Cir. 1989).  "If additional
28 proceedings can remedy defects in the original administrative

proceedings, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631,635 (9th Cir. 1981).   In this case, remand is recommended. There is sufficient evidence in the record to consider whether Plaintiff's blackouts have any effect on the limitations in Plaintiff's RFC and the ALJ is in the best position to perform this task. Conversely, if the ALJ determines additional evidence is needed that is not contained in the record, the ALJ has the authority to order a consultive examination, as a means to satisfy her duty to fully and fairly develop the record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ in a social security case has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"). Accordingly, this Court recommends the case be remanded for further review of Plaintiff's claim of repeated syncopal episodes.

### b) ALJ's decision not to include Plaintiff's major depressive disorder when determining Plaintiff's RFC

Plaintiff contends that the ALJ committed clear eorr by failing to incorporate into the RFC any work-related limitations as a result of Plaintiff's major depressive disorder . (ECF 18 at 4).  Plaintiff argues, that because the ALJ found Plaintiff's major depressive disorder severe at step two of the sequential evaluation, the ALJ was obligated to consider the effect of any limitations that impairment would have on Plaintiff's RFC at step 3 of the sequential evaluation. Plaintiff argues that in establishing the final RFC, the ALJ failed to present a hypothetical to the VE that accounted for Plaintiff's major depressive disorder.  (*Id.*)

The Defendant argues that "the ALJ never made an affirmative finding that Plaintiff's depression, standing alone, had more than a

minimal effect on Plaintiff's mental functioning." (ECF No. 19 at 4, citing A.R. at 14-15). Defendant further points out that the ALJ considered the effect of Plaintiff's mental limitations "in combination" with his other impairments. The ALJ determined that, taken together, all his limitations did have "more than a minimal effect on Plaintiff's ability to perform basic work-related activities." (*Id.*). Defendant also points to the fact that Dr. Rodriguez reported that Plaintiff should be able to easily recover from his depression within twelve months with proper treatment. (ECF No. 19 at 5, citing to A.R. at 280). As noted by Defendant, according to SSR 82-52 "in considering 'duration,' it is the inability to engage in substantial gainful activity because of the impairment that must last the required 12-month period." SSR 82-52. According to Defendant, the ALJ did not err when he omitted the mental limitation from the RFC. (ECF No. 19 at 5).

As noted above, the Social Security Regulations provide for a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) a claimant must be found disabled if she presently engaged in substantial gainful activity; (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations." *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). "[T]he step two inquiry is a de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d1273, 1290 (9th Cir. 1996). "Identification of a disability as severe at  step two "does not automatically lead to the conclusion that the [Plaintiff] has satisfied the requirement as step five." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). In addition, Plaintiff has the burden to establish a prima facie case of disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 2013). Plaintiff's burden is two-fold, he has to

1   demonstrate that he suffers from an impairment listed in the regulations
2   and meet the twelve month duration requirement. *Id.*

3      In this case, the ALJ found Plaintiff's major depressive disorder
4   severe at step two.   At step three, the ALJ discussed and evaluated the
5   record evidence upholding his conclusion that Plaintiff's allegation of
6   mental disability was not supported in the evidence presented.  Citing to
7   Dr. Rodriguez's assessment, the ALJ noted that Plaintiff's status was
8   generally within normal limits. (A.R. at 18).  Plaintiff was reported as
9   alert and oriented, with no evidence of hallucinations, delusions, thought
10  broadcasting or withdrawal.  (*Id.*).  The ALJ also cited to the  seven point
11  functional assessment prepared by Dr. Rodriguez that found Plaintiff
12  was:

13      1.   Able to understand, remember, and carry out simple one or
           two-step job instructions.
14      2.   Unable to do detailed and complex instructions.
        3.   Slightly limited in his ability to relate and interact with
15           supervisors, coworkers and the public.
        4.   Slightly limited in his ability to maintain concentration and
16           attention, persistence and pace.
        5.   Slightly limited in his ability to adapt to the stresses common
17           to a normal work environment.
        6.   Slightly limited in his ability to maintain regular attendance
18           in the work place and perform work activities on a consistent
             basis.
19      7.   Slightly limited in his ability to perform work actvities
             without special or additional supervision.
20  (A.R. at 281).

21  As noted above, Dr. Rodriguez also found that Plaintiff could easily
22  recover from his symptoms within twelve months with proper treatment.
23  (*Id.*). Accordingly, the ALJ found that Dr. Rodriguez's  "assessment
24  allows for the sustained performance of unskilled work [and that] all of
25  the jobs identified by the vocational expert. . . are unskilled in nature."
26  (A.R. at 22).

27      In addition, the ALJ also considered the opinions of Dr. Loomis and
28  Dr. Paxton, non-examining medical consultants, who reported that

1   Plaintiff had "no severe mental impairment whatsoever."  (A.R. at 22).
2   Considering all the record evidence at step three of the disability
3   evaluation, the ALJ concluded that Plaintiff's mental impairment did not
4   meet or medically equal in severity one of the listed impairments in the
5   applicable Social Security Regulations.  This assessment included
6   Plaintiff's mental impairment in combination with his other physical
7   disability claims. (A.R. at 19).  "Standing alone, the mere existence of
8   functional impairment is insufficient to justify an award of benefits. In
9   addition, there must be proof of the impairment's disabling severity."
10  *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir. 1981).

11        On this record, the Court finds Plaintiff did not satisfy his burden,
12  thus, the ALJ's decision not to incorporate Plaintiff's claim of mental
13  limitations into his residual functional capacity was based on substantial
14  evidence.  For these reasons, it is recommended that Plaintiff's motion
15  for summary judgment on this claim be denied and Defendant's motion
16  be granted.

17        **c) Whether Plaintiff's RFC should have been limited to**
18  **simple 1-2 step job instructions**

19        Plaintiff argues that the ALJ incorrectly "transformed" Dr.
20  Rodriguez's statement that Plaintiff was able to carry out simple one or
21  two-step job instructions into an ability to perform unskilled/simple
22  work.  According to the Plaintiff, all unskilled work is not limited to 1-2
23  steps, thus, the ALJ improperly construed Dr. Rodriguez's opinion
24  regarding Plaintiff's functional work limitations.  (ECF 18 at 6).

25        The Defendant argues that Dr. Rodriguez did not specifically limit
26  Plaintiff to 1-2 step jobs, rather, Dr. Rodriguez but found that Plaintiff
27  was "able" to perform such work.  Defendant also points out that "the
28  ALJ is the final arbiter with respect to resolving ambiguities in the

medical evidence." *Tommasetti v. Astrue,* 533 F.3d 1035, 1041-42 (9th Cir. 2008).

The ALJ did not find Plaintiff had a significant mental restriction that required a corresponding limitation in Plaintiff's residual functional capacity at step four of the sequential evaluation process.  The ALJ found that Plaintiff had the RFC to perform sedentary to light exertion work.  (A.R. at 19).  According to the ALJ, in making her finding, the ALJ stated she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . ." (A.R. at 19).

The ALJ noted that Plaintiff had "the following degree of limitation in the four broad areas of functioning set out in the disability regulations for evaluating mental disorders: mild restriction in actitivies of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace as to detailed or complex tasks, but no episodes of decompensation of extended duration." (A.R. at 19).  In reaching her conclusion, the ALJ adopted the opinion of examining psychiatrist, Dr. Rodriguez.  As noted above, Dr. Rodriguez found Plaintiff only slightly limited in most areas related to functioning in the workplace and that with proper treatment, Plaintiff could easily overcome his depression within twelve months. (A.R. at 280).  Based on the above, the ALJ adequately discussed and evaluated the evidence supporting her conclusion that Plaintiff's claim of mental limitation did not justify a corresponding limitation in the final RFC. The ALJ's decision was supported by substantial evidence in the record.

Unskilled work is the most simple skill level the Social Security Administration has listed.  See 20 C.F.R. § 404.1568(a).

Pursuant to § 404.1568(a), unskilled work is defined, in pertinent part,

as:

> [W]ork which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . . and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs. (*Id.*).

With Plaintiff limited to unskilled work, the ALJ asked the VE whether jobs existed in the national economy that are in the unskilled light occupational base. The VE was directed to take into account Plaintiff's age, education, work experience and residual functional capacity when determining the availability of specific jobs. (A.R. at 23). The VE testified that call out operator (DOT# 237.367-014), small parts assembler (DOT#929.587.010), and address clerk (DOT#203.587.010), were all jobs that existed in the national economy that Plaintiff was capable of performing within the strictures of his RFC. (A.R. at 23).

Given the definition of unskilled jobs in the CFR combined with the DOT definitions for the jobs cited by the VE, small parts assembler is the only job that requires one or two step instructions. Call out operator requires the application of common sense understanding to carry out instructions furnished in written, oral or diagrammatic form. *See* DICOT 237.267-014 (G.P.O.), 1991 WL 672186. Address clerk requires the application of commonsense understanding to carry out detailed but uninvolved written or oral instructions. *See* DICOT 209.587-010 (G.P.O.), 1991 WL 671797. However, since the ALJ did not limit Plaintiff to the performance of jobs with one or two step instructions only, there is no clear error as Plaintiff argues. Indeed, the daily activities cited by Plaintiff (e.g. poker playing, collecting sports memorabilia, handling his own finances and paying his own bills) are arguably commensurate to the level of mental difficulty required for these jobs. "If a claimant is able to spend a substantial part of his day

1  engaged in pursuits involving the performance of physical functions
2  transferable to a work setting, a specific finding as to this fact may be
3  sufficient to discredit a claimant's allegations." *Morgan v. Apfel*, 169
4  F.3d 595,600 (9th Cir. 1999).

5  "Where, as here, the ALJ has made specific findings justifying a
6  decision to disbelieve an allegation ... and those findings are supported
7  by substantial evidence in the record, our role is not to second-guess that
8  decision." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).   Because a
9  reviewing court must uphold an ALJ's decision if it is supported by
10 substantial evidence, this Court recommends denying Plaintiff's second
11 claim.

12 **IV.  Conclusion**

13     As the Court finds that the ALJ did not adequately address
14 Plaintiff's claims of regular blackouts (syncope), the Court
15 **RECOMMENDS** that the case be **REMANDED** for further review.

16     **IT IS FURTHER RECOMMENDED** that Plaintiff's Motion be
17 **DENIED** and that Defendant's Motion be **GRANTED** as to the other
18 claims presented.  This Report and Recommendation of the undersigned
19 Magistrate Judge is submitted to the United States District Judge
20 assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

21     **IT IS HEREBY ORDERED** that any written objection to this
22 REPORT must be filed with the Court and served on all parties no later
23 than **September 18, 2015**.  The document should be captioned
24 "Objections to Report and Recommendations."

25     **IT IS FURTHER ORDERED** that any reply to the objections
26 shall be filed with the Court and served on all parties no later than
27 **September 25, 2015**.  The parties are advised that failure to file
28 objections within the specific time may waive the right to raise those

objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 4, 2015

Hon. Mitchell D. Dembin
U.S. Magistrate Judge

14cv1479-BAS-MDD